IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH J. SILVER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 10-2326 |
| LA FITNESS INTERNATIONAL, LLC | : | |

**MEMORANDUM RE: APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES**

**Baylson, J.**                                                                                          **September 27, 2013**

The proposed class action settlement in this case reached between counsel was the subject of a notice to the putative class and received preliminary approval from the Court. Following a hearing on September 19, 2013, and review of the extensive papers submitted in support of the settlement, as well as the single objection, the Court has determined that under the facts and law the settlement should be approved.

This case was brought as a class action against defendant L.A. Fitness ("LAF"), on behalf of former members of LAF, who asserted that they incurred additional monthly billing charges after they attempted to cancel their monthly-dues membership agreements, and on behalf of all persons who were allegedly subject to LAF's misleading contract provisions and other practices. LAF, a privately owned company with headquarters in Irvine, California, owns and operates over 500 fitness clubs in 28 states across the United States. This case centers upon LAF's practices with regard to securing memberships on a monthly basis, specifically difficulties that members had in cancelling their membership agreements, and the alleged misrepresentations made by LAF about its cancellation policies.

1

The case was extensively and vigorously litigated by very competent counsel. At the outset of the case, the Court held a number of hearings, at which it noted the potential complexities of the case and the significant discovery burdens which the plaintiffs' discovery requests sought to impose on defendant – discovery that would only be justified if the case were determined to be an appropriate class action under Fed.R.Civ.P. 23. In fact, the asymmetrical nature of the discovery warranted the Court, after extensive hearings on discovery disputes between the parties, to require significant cost shifting. The Court held that for plaintiffs to achieve the additional discovery they sought, plaintiffs should bear a large portion of the defendant's expense. *See Boeynaems v. L.A. Fitness Int'l, LLC*, 285 F.R.D., 331 (E.D. Pa. 2012).

1. Summary of Settlement Terms

Shortly after the Court issued that opinion, the parties informed the Court that they had embarked upon serious settlement discussions before an independent mediator, a former federal district judge, which resulted in the Settlement Agreement now before the Court for approval. Stated briefly, there are several different categories of class members, which determine the settlement and what they will receive:

**Class A –** These individuals paid an additional monthly fee for membership after they expressed intent to cancel. They will receive one-third of that monthly fee (approximately $15) as class settlement proceeds, or a forty-five (45) day pass to any LAF facility.

**Class B** – LAF consumers in this category attempted to cancel, but their cancellation notice was never timely processed. The settlement terms for this group are divided into three categories:

    a. Those with written proof of mailing the cancellation will get a full refund

2

equal to 100% of the damages they could recover in this case, up to monthly payments for one year (approximately $420) less any refunds.   This group will also receive a free 45-day facility pass.

        b.       Those with some proof of cancellation, but not specific proof of mailing, will receive 50% of their additional monthly payments for one year, less any refund, plus a 45-day pass.

        c.       All others in this group will receive a 60-day club pass, if they file a claim, but no proof will be required.

In addition, the settlement offers significant equitable relief to the members of the class in that LAF has agreed to revise its policies, procedures, and notices to members to make the circumstances and procedures under which an LAF member can cancel and/or receive a full refund more easily understandable.

The passes that class members will receive will be fully transferrable.

In addition, and very significant, LAF has agreed to pay the full amount of counsel fees and costs, plus the costs of class administration.

    2.    <u>Rule 23 Factors</u>

There are four requirements for Rule 23(a) class certification, and the Court finds that each one has been met:

        a.       **Numerosity** – It is obvious that there are thousands of members and former members of LAF clubs, which is sufficient under settled precedent to satisfy the numerosity requirement.

        b.       **Commonality** – The common question in this case is the allegedly deceptive nature of LAF membership agreements.   As one example of this, plaintiffs assert – with

some support in the record – that although LAF offers a "money back" guarantee for cancellation, in order for an LAF member to take advantage of this offer, the member had to cancel on the same day the member joined.   Other aspects of the case detailed in plaintiffs' brief in support of the settlement detail and satisfy the commonality requirement.

        c.     **Typicality** – The claims of the plaintiffs are typical of all class members, in that all have been, at one time or another, LAF members and were treated similarly.   They therefore have typical claims.

        d.     **Adequacy** – Plaintiffs' representatives and their counsel have been diligent through the extensive history of this case and have been attentive to their responsibilities as class representatives through a long discovery period and lengthy settlement negotiations.   Further, class counsel are very experienced in litigating class actions.

        e.     **Rule 23(b)(3) Factors Are Met** – The Court finds that the common questions predominate over the individual questions.   The common questions are focused on largely uniform LAF membership agreements and primarily nationwide LAF advertising and marketing materials.   Thus, liability will turn on whether these are deceptive and will not vary by member to member.

        f.     **Superiority** – The Court finds that the class action is the superior method of dealing with the disputes.   The nationwide aspect of the settlement shows that this is a more efficient and less expensive undertaking for settlement of the disputes between class members and LAF than individual litigation, which would require possibly thousands of suits in many jurisdictions across the country.

3.     *Girsh* Factors

After reviewing the leading Third Circuit case *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Court believes that all the factors set forth by the Third Circuit have been satisfied in this case and that the settlement should be approved. The settlement is a superior result to the extensive costs, in both time and money, that would be required if the litigation continued. Damages will be hard to prove and would be very small per class member. The discovery plaintiffs desired would have required production of millions of documents spanning several years. The class has reacted to the settlement very favorably. Although there are thousands of class members, there has only been one objection by two individuals. One objector asked for leave to appear at the settlement hearing by telephone but made no contact with Chambers to arrange an appearance. As the plaintiffs point out in their brief discussing the objection, it is doubtful that one of the objectors has standing to object. In any event their objection is not meritorious and is dealt with in this Memorandum approving the settlement.

Although a good deal of discovery has already transpired and the parties understand the strengths and weaknesses of their cases, the settlement reflects the exchange of documents and the depositions taken, yet will not require the voluminous discovery that would be necessary in the absence of a settlement.

The plaintiffs bear substantial risk of not establishing liability because LAF has been vigorously defending its practices and denying that there was any deceit or misrepresentation. The Court recalls from the discovery disputes in this case that the written documents which LAF provided to its members were rather verbose and hard to understand for a lay person. Although the rights to cancel were set forth in some detail, plaintiffs could contend they were not readily understandable by an average class member due to the great detail, small print, and legal language

5

in the membership agreement expressing the right to cancel.   It is hard to predict with any assurance what the reaction of a jury would be to such a document.   Although some might call these agreements a "contract of adhesion," LAF could show that it followed the strict language of the agreement and some people were able to achieve cancellations by following the strict terms of the agreement.   Plaintiffs would probably produce testimony at trial that others did not understand the terms and were unable to understand how to effectively and timely cancel.   Thus, this would be a highly disputed issue at trial.

Plaintiffs also bear a substantial risk of not establishing damages.   Even if plaintiffs were successful in proving liability, the damages are inherently small because the membership fees are small.   A jury could find that the members received value for their membership fees even though there was some deception in the manner in which LAF marketed its memberships.

Plaintiffs sustain substantial risk maintaining class action status through trial because LAF asserted that individual clubs had individual marketing practices and communications with members, but plaintiffs asserted that there were more uniformities than there were differences.   Nonetheless, this was a risky aspect for the plaintiffs.

Although LAF is a large company, it is privately held, its financial statements are not public, and the Court cannot say with any certainty that it has the ability to withstand a large monetary judgment.   However, the damages of each individual member are relatively small and thus the overall monetary exposure is unknown.

As to the last *Grish* factor, the Court finds that the settlement fund is reasonable in light of the best possible recovery in all the litigation.

In addition, the notice program satisfies Rule 23 and due process. There have been over

two million notices sent to putative class members, and LAF is bearing all of the expense of the notice program.

    4.    <u>Coupon Aspect</u>

Part of the settlement of this case constitutes what is often called a "coupon" settlement. As in many consumer class actions, the individual damages recovered by an individual consumer is likely to be a very small amount, but here there are significant non-monetary benefits to the class members, albeit in the form of a "coupon." The Court believes that this settlement should be approved because the members of the class are individuals who already have an interest in patronizing a fitness club. Usage of these clubs varies among members, with some going almost daily and others being infrequent visitors. Membership can be expensive, and the offering of a free club pass to any LAF facility for 45 or 60 days is a benefit of some value to individuals who have previously been LAF members and will appreciate access without charge. In addition, there is some monetary benefit, albeit not really significant in terms of dollars.

The Court believes that the non-monetary relief of LAF agreeing to revise its practices and notification procedures will be of significant value in making it clearer to class members how they will be treated in terms of possible cancellation once they become members.

The leading case on coupon settlements within the Third Circuit is *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 810 (3d Cir. 1995) (finding use of coupons in class action context unsatisfactory when the coupons do not address the alleged wrongs that formed the central basis of the complaint—but not criticizing the use of coupon settlements in general). The Court concludes that many of the coupon aspects of the settlement avoid the problems which the Court criticized in *General Motors*, particularly the fact that the value of the

coupons is documented in the settlement agreement and is reasonable in all respects. This case is much less complex than *General Motors,* and the value of the settlement is much less. However, counsel have documented the value of the coupons to the class members, and the coupons do in fact have value, which is ascertainable and reasonable under all of the circumstances.

It is true, as the objectors point out, that LAF may get some marketing value out of the coupon program which may attract back to LAF some prior members who left LAF for various reasons. However, this is not necessarily an evil concept, and the Court finds that the majority of district courts within the Third Circuit that has considered coupon settlements after *General Motors* has approved them. See *O'Brien v. Brain Research Labs, LLC*, 2012 WL 3242365, at *23-24 (D.N.J. Aug. 9, 2012) (discussing valuation of coupon in settlement and ultimately approving the class settlement) (unpublished); *O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266, 303 (E.D. Pa. 2003) (approving coupon settlement after discussing the factors enumerated by the Third Circuit in *General Motors* that should be used to evaluate the appropriateness of vouchers in consumer product class actions); *Hanrahan v. Britt*, 174 F.R.D. 356, 367-68 (E.D. Pa. 1997) (discussing and ultimately approving coupon settlement); *Petruzzi's, Inc. v. Darling-Delaware Co.,* 880 F. Supp. 292, 297-98 (M.D. Pa. 1995) (noting that coupon settlements have been approved in a variety of contexts but cautioning that courts that approve non-cash settlements must have some basis for estimating the real value of the settlement, and disapproving the proposed settlement on that ground); *Weiss v. Mercedes-Benz of North America, Inc.*, 899 F. Supp. 1297, 1303-04 (D.N.J. 1995) (discussing concerns of coupon settlements raised in *General Motors* and approving the settlement).

Furthermore, LAF is completely paying the agreed upon legal fees and costs and expenses

of administration of the settlement.

The Court notes that counsel have represented, and the Court accepts their representation, that the agreements on counsel fees only came after there had been a settlement on substantive provisions of the merits of the claim.

For the above reasons, the Court approves the proposed order for settlement and attorney's fees.

O:\CIVIL 10\10-2326 Boeynaems v. LA Fitness\10cv2326.memo.settlement.docx